IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KATHY MARTIN,
  Plaintiff,

v.            Case No: 3:09cv508/LAC/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
  Defendant.

_____

# REPORT AND RECOMMENDATION

  This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Kathleen Grantham Martin's application for disability insurance benefits under Title II of the Act.

  Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

## PROCEDURAL HISTORY

Plaintiff, Kathy Martin, filed an application for benefits claiming an onset of disability as of October 20, 2006. The application was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held on May 5, 2009 at which Ms. Martin was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 17-26) and Ms. Martin requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 1-3). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Martin met the insured status requirements of the Social Security Act through December 31, 2013; that she had not engaged in substantial gainful activity since October 20, 2006; that she had a severe impairment of degenerative disc disease; that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix One; that she had the residual functional capacity to perform light work with the exception of lifting only ten pounds, sitting, standing or walking for six hours each in an eight hour day with normal breaks, and never climbing ladders, ropes, or scaffolds; that she was capable of performing her past relevant work as an office nurse/medical secretary; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

    1.    Is the individual currently engaged in substantial gainful activity?

    2.    Does the individual have any severe physical or mental impairment that meets the duration requirement?

    3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

    4.    Considering the individual's residual functional capacity, can the individual perform past relevant work?

    5.    Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th

Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Martin suffered multiple severe injuries in a motor vehicle accident in September 2002, including a compression fracture at T-6, transverse process fractures at L1, L4 and L5, and a compression fracture at L3 that compromised the foramen on the right under the L3 pedicle. She was treated conservatively with medication and a back brace. She improved for a time but gradually started having significant difficulties (tr. 264-266). On March 6, 2003, her treating neurosurgeon, Marcus Schmitz, M.D., administered injections which she tolerated well (tr. 302). In March 2003 she also started complaining of a worsening due to an abrasion to her left shoulder and she was given an injection for that condition (tr. 307-308). By June 2003, Ms. Martin was experiencing increased mechanical low back pain with just about any activity. She also experienced left hip pain and left lower extremity radiculopathy in the L3-L4 dermatome. She stated that she awoke every morning with severe pain and was taking Lortab. She was consistent in her required physical therapy in an effort to strengthen her paraspinus muscles. Physical examination on June 16, 2003 showed compromise in the foramen at L3 on forward flexion. Surgery was recommended but she did not have enough personal time off built up in order to have the surgery at that time (tr. 304-305).

Ms. Martin's condition continued to worsen and on August 28, 2003, Dr. Schmitz, performed multi-level surgery, including the placement of pedicle screws

at L1, L2, L3, L4 and L5, and fused the vertabrae at L1-2, L2-3 and L3-4. The surgery resolved Ms. Martin's pain in her legs but on follow up she continued to have tingling and numbness with some aching in cold or rainy weather. She also had particular difficulty after standing for any period (tr. 300). By December 2003 she had improved but still had clicks and stiffness in her back (tr. 298).

The medical record is silent for just over a year when in March 2005 Ms. Martin complained of chest pain. She reported to the emergency room for a complete work up but no significant abnormalities were found (tr. 295).

In August 2005, Ms. Martin's condition again worsened with increased back pain and radiation into her left leg. She was treated by Nancy Morris, M.D., a rheumatologist, who practices in the same clinic as Dr. Schmitz. On initial examination Ms. Martin had difficulty with foot drop causing her to trip frequently. She could not bend forward to lift and found it difficult to ride her lawn mower because of excruciating low back pain. She could not carry a laundry basket. On physical examination there was positive straight leg raising on the left but motor strength was full as were deep tendon reflexes (tr. 292).

Because of her increasing back pain, x-rays were taken on March 28, 2006 that disclosed mild diffused spondylosis and degenerative disc disease but no further compression fracture or alignment abnormality (tr. 225-226). Dr. Morris noted that Ms. Martin was complaining of pain in her neck as well as her low back. Neck discomfort was worse with range of motion. On examination there was tenderness throughout the thoracic lumbar spine. There was fairly good functional range of motion of the neck but continued complaints of pain. Motor strength was normal (tr. 287).

On December 28, 2006, Ms. Martin was involved in another motor vehicle accident. She was taken to the emergency room but, other than complaints of continued low back pain and tenderness, she had no significant complaints and was discharged to follow up with her physician (tr. 218-219).

On January 17, 2007, Dr. Morris filled out a report for disability benefits through a private insurer. She noted that Ms. Martin still complained of pain and numbness, that subjective findings were supported by x-rays and MRIs, and that she was taking Robaxin, Buprenorphine, and Effexor. She opined that Ms. Martin could sit and walk for one hour intermittently and stand for two hours intermittently, that she could never climb, twist, bend, stoop, reach above the shoulder level or operate heavy machinery, and that she could lift up to 10 pounds occasionally. She could push and pull only occasionally but fine finger movements and hand/eye coordination were normal. For restrictions, Dr. Morris indicated that Ms. Martin was unable to bend, was unable to lift greater than 10 pounds, was unable to sit more than 10 minutes at a time or stand for more than 20 minutes at a time. She also noted that lumbar surgery was planned for February 14, 2007 (tr. 221-22).

Also on January 17, 2007, Rick Beach, M.D., a chronic pain specialist, filled out a claim form for the same private insurer. He indicated that Ms. Martin had chronic, severe back pain secondary to her motor vehicle accident with resulting compression fractures, pedicle fractures and fusions. She suffered from lumbar spondylosis and cervical spondylosis. Dr. Beach opined that Ms. Martin could not "lift anything" or sit for extended hours. He indicated that sitting, standing and walking could only be intermittent but for no particular time. He also noted that she could lift up to 10 pounds continuously but no more (tr. 223-224).

Also on January 17, 2007, MRIs disclosed degeneration of the discs in Ms. Martin's neck, particularly at C5-C6, where there were hypertrophic changes resulting in narrowing of the neural and central spinal canal. An MRI of the lumbar spine showed focus disc herniation to the right on L5-S1, multi factor neural foramenal narrowing or stenosis particularly at the three lower-most intervertebral levels and greatest at L5-S1, and narrowing of the right neural foramen at T11-T12 secondary to hypertrophic changes (tr. 283-285).

Ms. Martin returned to Dr. Schmitz, her original treating neurosurgeon on January 22, 2007. Dr. Schmitz noted her earlier history, and specifically that Ms. Martin had significant difficulty with left lower extremity radiculopathy and a history of osteoporosis that complicated her course, but that she was started on medical therapy and eventually got better. Her December 28, 2006 automobile accident, however, caused neck and arm pain with the inability to raise her arm much higher than her head and significant right thigh pain that went away but left residual numbness from the right groin to the right knee. She walked without much difficulty and denied much current mechanical back pain. On physical examination she was positive for left neck pain and left shoulder pain. She had full range of motion in her neck with some tenderness on the left side and in her left deltoid and trapezius muscles. Dr. Schmitz reviewed the recent cervical MRI and the lumbar MRI, and concluded that an L5-S1 minimally invasive discectomy on the right was indicated. Ms. Martin also indicated that she understood this would not help her back symptoms significantly (tr. 238-239).

On February 14, 2007, Dr. Schmitz performed a discectomy at L5-S1 (tr. 232). On follow up, on April 3, 2007, Ms. Martin was noted to be much improved. She still had problems with her neck but was not interested in any surgery then because her arm and neck pain were "manageable." (tr. 232-233)

On July 18, 2007, Ms. Martin was seen by Dr. Michael Oleksyk, M.D., for whom she had previously worked as a nurse. It was the first time he had seen her in about two years. He noted that she had been followed by Dr. Morris for her continuing back problems and had had multiple surgeries by Dr. Schmitz. She continued to be chronically symptomatic. Her December 2006 motorcycle accident totaled her car and resulted in additional surgery in February 2007 after which she continued to have very debilitating chronic pain. She could not sleep although Melatonin was somewhat helpful. On examination her neck was supple, but she had severely decreased range of motion in her lumbar spine. Dr. Oleksyk diagnosed degenerative

disc disease and chronic pain syndrome, insomnia, anxiety/tension with depression (tr. 270).

On August 3, 2007, Ms. Martin returned to Dr. Morris, her rheumatologist. Because she could no longer work as a nurse, Ms. Martin reported that she was working two days a week in a retail store but that bending, lifting and carrying boxes was aggravating her low back. There was tenderness in the low lumbar spine, straight leg raising was negative bilaterally and there was full motor strength. Dr. Morris noted that Ms. Martin's problem was severe incapacitating back pain as a result of her accidents and resulting surgeries (tr. 268).

Ms. Martin returned to Dr. Oleksyk on September 7, 2007. She had done fairly well. She complained of right hip discomfort and chronic back pain. Effexor seemed to be helping her depression (tr. 363). On September 13, 2007, Dr. Oleksyk filled out a questionnaire in which he opined that Ms. Martin could walk for less than one hour, stand for less than one hour, and sit for less than one hour, could frequently lift less than five pounds and occasionally lift five to ten pounds, that she was restricted in climbing and bending, that she would require rest every two hours for at least 30 minutes during any day, and that the medication she was taking had no major side effects (tr. 347-348). On September 14, 2007, Dr. Morris filled out a similar questionnaire. The only difference in her opinions was that Ms. Martin could lift less than five pounds only occasionally rather than frequently. She also noted that Ms. Martin could not bend at the waist and suffered from depression associated with her chronic medical problems (tr. 354-355). Ms. Martin returned to Dr. Morris on February 19, 2008 essentially unchanged (tr. 405).

On April 10, 2008, Dr. Okeksyk wrote a letter "To Whom It May Concern," indicating that he was the internal medicine physician who had cared for Ms. Martin for 20 years. He noted that she was involved in a motor vehicle accident which resulted in severe back injuries. She was eventually able to return to work on a reduced basis but had recently been in yet another accident when another vehicle

ran through a stop sign and struck her. She suffered additional injuries which led to her becoming totally and permanently disabled. As a result of this accident or disability, she had to cash in her IRA in order to provide money for her living expenses (tr. 439).

On September 24, 2008 Ms. Martin returned to Dr. Morris who noted tenderness in the lumbar spine (tr. 403). On March 12, 2009, Dr. Morris noted that Ms. Martin was working for 20 hours a week in a retail establishment but that she had pain on standing, radicular pain in her right leg, severe tenderness in her lumbar spine, lumbar lordosis, and positive straight leg raising on the right (tr. 401).

In addition to her treating physicians, Ms. Martin was examined by Richard Lucey, M.D., at the request of the State Agency, on August 6, 2007, four months after her last discectomy. She gave Dr. Lucey a history of her various accidents and surgeries and said that she continued to experience pain in her low back and in the back of her right thigh to the knee, occasionally to the ankle. On examination, her arm grip strength was normal and there were no noted deficiencies. In the legs, there was positive sitting root pain in the right thigh to the low back with full extension of the right leg while sitting. Straight leg raising was negative to 50° on the left and 40° on the right, limited by discomfort in the back. Ms. Martin transferred slowly from sitting to lying down and range of motion was significantly diminished throughout her low back. There was bony prominence to the left of midline over the lower thoracic region. Dr. Lucey's appraisal was multiple compression fractures requiring spinal fixation with instrumentation of L1-L5 in the past, status post laminectomy for L1-S1 lumbar disc herniation with residual chronic low back pain and sciatica of the right lower extremity. He noted that her right thigh measured one-half inch smaller than the left. Dr. Lucey did not offer any opinions as to any limitations Ms. Martin might have (tr. 314-316).

## DISCUSSION

Ms. Martin argues that the ALJ erred in (1) failing to evaluate her subjective complaints of pain in accordance with the rules and the law, (2) failing to give proper weight to the opinions of treating physicians, (3) improperly determining her residual functional capacity, and (4) finding that she could return to her prior relevant work, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Martin was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Subjective complaints of pain.</u>

Ms. Martin first contends that the ALJ improperly evaluated her subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Commissioner of Social Sec.,* 365 Fed.

---

[1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

Appx. 209, 2010 WL 476691, *3+ (11th Cir. 2010) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection

which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Here the ALJ did not properly apply the pain standard. There can be no question that Ms. Martin met the first requirement, and the ALJ so held. Ms. Martin was involved in a two motor vehicle accidents and had surgeries at multiple levels of her lumbar spine. She must then meet one of two other requirements: (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. Without further development, the record evidence establishes that she meets both.

The available evidence in this case points to confirmation of the severity of Ms. Martin's pain. She tried for a time after her first accident to get by with conservative treatment, but Dr. Schmitz finally performed surgery at multiple levels, fusing three joints and inserting screws and rods at four levels. Then, although Ms. Martin "got better," she was never shown to have gotten well. After her second accident she underwent additional surgery. The progression of her care under physicians at the same clinic showed initial improvement followed by worsening. In virtually all physical examinations she complained of low back pain and pain, tingling and numbness in one or both of her legs. X-rays and MRI's confirmed the underlying conditions. Contrary to the findings of the ALJ (as will be discussed in more detail in the second section, below) she had positive straight leg raising according to two treating physicians and probably had it according to an examining

physician. There was plentiful evidence to support a finding that Ms. Martin had severe pain.

Also, the injuries she suffered with the multiple surgeries can *reasonably be expected* to give rise to the claimed pain. This is not a case where the claimant was treated conservatively with medication and physical therapy. Here Ms. Martin consistently complained of exactly the kind of problems reasonably to be expected in such a situation.

The ALJ emphasized Ms. Martin's testimony that her pain was reduced by medication and moving around. The ALJ also noted that Ms. Martin was working part time at a Dillard's store, and that while she has been tardy and has had to leave early, found that she did the same job as other workers, impliedly saying that she was able to work successfully. However, the ALJ ignored the unrefuted evidence that Ms. Martin had to cash in the IRA she had built while working as a nurse (tr. 439), and had to work 20 hours a week in spite of her pain because she had nothing else to live on. The part time job was not treated as substantial gainful activity, but it was effectively used as part of the proof that Ms. Martin could work full time. That reasoning turns logic on its head, and effectively punishes Ms. Martin for trying to survive on what little income she could earn, regardless of how much pain it caused.

The ALJ noted Ms. Martin's testimony that she experienced pain when she stood or walked for long periods, but then rejected that testimony because Ms. Martin could also walk during her job without a break. But the ALJ ignored her further testimony: "And four hours kills me but the only reason I'm working is because I don't have no one else and I don't have any other money." (Tr. 40). The ALJ also relied heavily on Ms. Martin's testimony that she could lift ten pounds to find that she could lift ten pounds frequently. The "frequently" part of the equation is unsupported, however. The ALJ asked Ms. Martin how much she could lift, and she responded "Probably 10 pounds." (Tr. 37). Putting aside the uncertainty of what was meant by "probably," Ms. Martin was not asked how often or for how long she

could lift 10 pounds. The ALJ's finding that Ms. Martin could lift that much "frequently" was not supported by Ms. Martin's testimony. Finally, the ALJ seized on Dr. Oleksyk's instruction for Ms. Martin to walk, and used it to support a finding that Ms. Martin could walk without restriction. Dr. Oleksyk did not tell Ms. Martin to walk without restriction. He indicated that she was totally disabled (tr. 439). The fact that he recommended walking was just that, to walk; he did not recommend that she walk and stand all day on the job. The ALJ's determination that Ms. Martin did not meet the pain standard was not supported by substantial record evidence, and the matter should be reversed.

    2. <u>Treating physicians.</u>

Ms. Martin next contends that the ALJ erred in discounting several medical opinions. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir.

1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[2] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Here the treating physicians were unanimous in their opinions that Ms. Martin was disabled, or was so limited that she either met one of the listings or did not have residual functional capacity to work. Read carefully, the ALJ rejected the opinions of the treating physicians in large part because they did not record positive straight leg raising results. This finding was not supported by substantial record evidence.

---

[2]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

*Case No: 3:09cv508/LAC/MD*

**There were occasions when a physician did not make note of a straight leg raising test, and there were others when a straight leg raising test was negative. But, contrary to the ALJ's finding, Dr. Morris noted positive straight leg raising on August 4, 2005 (tr. 292) and again on March 12, 2009 (tr. 401), well after her onset date and after her multiple surgeries.**

The ALJ also found that the examining physician, Dr. Lucey, did not record positive straight leg raising results. That is probably incorrect. In his examination Dr. Lucey noted "There is positive sitting root with pain in the right thigh to the low back with full extension of the right leg when sitting." (Tr. 315). Dr. Lucey did not explain what he meant by "sitting root." However, there is some authority stating that sitting root is the straight leg raising test in the sitting position by another name. FamilyPracticeNotebook at http://www.fpnotebook.com/ortho/exam/LwBckStngExm.htm (viewed on November 18, 2010). Dr. Lucey also found "[n]egative SLRs to 50 degrees on the left and 40 degrees on the right, limited by some discomfort in the back, but not in the legs, when supine." (*Id.*). That does not mean that Dr. Lucey found negative straight leg raising overall, however - only that the test was negative at 50 and 40 degrees on the left and right, respectively. That may mean that straight leg raising was positive at more than 50 and 40 degrees, since the straight leg raising test is ordinarily carried by lifting each leg to 90 degrees. Logically, if a test is negative to 40 degrees on the right (where Ms. Martin claimed most of her pain), it was positive above 40 degrees. Indeed, this is strongly hinted in the finding that the test was limited by discomfort in the back (*id.*).

Dr. Morris opined that Ms. Martin met Listing 1.04A. The regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out specific physical and mental conditions that are presumptively disabling. If a claimant meets the requirements of one of the listings, no further proof of disability is required. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Relevant to this case, Listing 1.04A, *Disorders of the spine*, requires a showing by a claimant of

degenerative disc disease (*which the ALJ found* (tr. 19)) with evidence of nerve root compression evidenced by (1) neuro-anatomic distribution of pain (*found by Dr. Schmitz* (tr. 238-39, 300), *Dr. Morris* (tr. 401), *and Dr. Oleksyk* (tr. 347-49)), (2) limitation of loss of motion of the spine *(which all the treating physicians and Dr. Lucey found* (tr. 314-19)), (3) motor loss (atrophy associated with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss (*found by Dr. Morris* (tr.401)) *and Dr. Lucey* (tr. 314), AND, if there is involvement of the lower back, positive straight leg raising test (sitting and supine). 20 C. F. R., Ch. III, Pt. 404, Subpt.P, App. 1.

As noted above, the ALJ placed great emphasis on the lack of positive straight leg raising (tr. 22, 24) but that fact finding is not supported by substantial record evidence. The ALJ discounted Dr. Morris' opinion that Ms. Martin met Listing 1.04A by noting that Dr. Morris never found positive straight leg raising "when a positive test is required to meet the listing." (Tr. 22). As noted above, Dr. Morris did find positive straight leg raising. It also appears that Dr. Lucey likely did, and the rules do not require that listing requirements be observed by every physician, only that they be present.

Finally, the ALJ's decision is further cast in doubt by his reliance on the opinions of two physicians who were neither treating nor examining - physicians who never saw Ms. Martin. While that may be permissible in some instances, a non-examining physician's opinion is generally entitled to little weight. 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).

This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner

failed to apply the law and regulations, or where the taking of additional evidence is necessary.  It is the law of this Circuit that where the ALJ fails properly to discount the opinion of the treating physician, he is held as a matter of law to have accepted it as true.  *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986).  When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made.  The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*.  Moreover, the failure to apply the correct legal standard is grounds for reversal, not remand.  *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983).  At the hearing, the vocational expert was asked whether Ms. Martin could work if Dr. Aleksyk's opinion was accepted.  The vocational expert replied that she could do "absolutely no work." (Tr. 52).  The ALJ improperly discounted the opinions of the treating physicians and therefore accepted them as true as a matter of law.  The record has been fully developed and Ms. Martin is entitled to disability benefits.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be REVERSED and that the Commissioner be ordered to compute and pay disability benefits to Ms. Martin under her application of May 8, 2007, that judgment be entered in favor of plaintiff pursuant to sentence four of 42 U.S.C. § 405(g), and that the clerk be directed to close the file.

At Pensacola, Florida this 24th day of November, 2010.

/s/ *Miles Davis*
    **MILES DAVIS**
    **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**